## DWINELLE *a.* HOWLAND.

*Supreme Court Circuit, New York County; December*, 1854.

TESTIMONY TAKEN UPON COMMISSION.—PROPER MODE OF RETURN.

The power to issue a commission to examine witnesses abroad, is an innovation upon the common law, and should be strictly exercised.

Where a commission is returned by an agent, his affidavit, as prescribed by statute, that he received it from the hands of the commissioners, and that it has not been opened or altered since he received it, is indispensable, unless waived by consent.

A commission returned by express and unaccompanied by such affidavit, *held*, inadmissible; although so returned pursuant to the order awarding the commission.

This was a ruling at circuit, rejecting certain evidence.

The plaintiff, on the 22d of December, 1853, applied to the special term of this court, for leave to issue a commission in this action on the part of the plaintiff, to be directed to certain commissioners in San Francisco in California, authorizing them to examine on oath upon interrogatories and cross interrogatories, certain witnesses on behalf of the plaintiff, residing in California. The court made an order awarding the commission.

This order provided that the commission and the return thereto when taken, might be transmitted either by mail, *or by either of the Express Companies doing business between New York and San Francisco*, and that the return to such commission, be directed to Richard B. Connolly, clerk of the City and County of New York, at the City of New York.

The commission *was not returned by mail*, but had an endorsement upon it, in the following words:

"Deposited in the letter bag of Adams & Co. Express, *at San Francisco*, this 31st of May, 1854, by me,

"B. F. VOORHEES, Commissioner."

On the trial, the plaintiff offered to read in evidence certain depositions annexed to the commission.

The defendants objected to the reading of the depositions in evidence, on the ground that there was no affidavit of any agent, to whom the commission and return were delivered in San Francisco, showing *that the agent received the commission and return from the commissioners*, and *that the same had not*

*been opened* or *altered, since he so received it;* and because it did not appear how, or in what manner the commission and return had been transmitted from California to the clerk of this court in New York.

The plaintiff, for the purpose of obviating the objection, offered to prove by a witness, that the uniform course of business on the part of Adams & Co., and all other Express Companies doing business between San Francisco and New York, is, 'that letters are deposited at San Francisco, by the parties sending them, in the letter bags of the Express Companies; that the letters thus deposited are taken care of by the office agents at San Francisco, and that when the steamers are ready to sail, the letter bag is closed, and put in charge of a messenger, not one of the office agents who receives letters; that such messenger generally accompanies the bags containing the letters to New York, but some times delivers them to another messenger at Panama or Aspinwall; that the bags are brought to the office of Adams & Co., in New York, when the duty of the messenger is at an end; that then the uniform course of business is, that some other agent or clerk of the Express Company, delivers the letters to the persons to whom they are addressed; that the firm of Adams & Co., is composed of three persons, one residing in San Francisco, one in New York, and one in Boston, and that by the uniform course of business, neither of the partners attend to the reception or delivery of letters sent by their Express. The defendants objected to the testimony, and the judge sustained the objection, and excluded it, and held that the depositions could not be read in evidence.

The plaintiff was permitted to withdraw a juror.

The reasons for rejecting the evidence were afterwards reduced to writing by Mr. Justice Clerke.

*C. P. Kirkland,* for plaintiff.

*N. Chase,* for defendants.

CLERKE, J.—I. At common law, no commission to examine witnesses abroad on interrogatories could issue without consent; although a court of equity could, in aid of an action in a common law-court, compel an obstinate party to consent.

In England, the common law-courts had no general power to issue commissions, until the Act passed as recently as the reign of William IV. (1 *W. I V., C.* 22).

Our courts have possessed this power for more than sixty years; but, it was always considered an innovation, which should be exactly dealt with, as a departure from a mode of presenting evidence, which has ever been justly considered one of the best safeguards in the trial of facts.

The presence of the witness at the trial, and his oral examination before the jury, is, under our system, a favorite and almost indispensable requisite; and, among numerous other usages, distinguishes the common from the civil law. Any statute encroaching upon this usage, like any other in derogation of the practice of the common law, must be strictly observed.

II. The *Rev. Statutes* (2 v. 394) prescribe only two methods of returning a commission : either 1, by depositing it in the nearest post-office ; or 2, returning it by an agent of the party who has sued out the order or writ, according to the direction made by the judge or court—no other mode is contemplated. In this case, it was provided that the commission might be returned either by mail, or by an agent,—an express company. Section 25 of the statute provides, that, if the packet be delivered to an agent, he, on delivering it to the clerk or judge, shall make an affidavit, that he received the same from the hands of one of the commissioners, and that it has not been opened or altered since he so received it. Indeed, the whole article is very exact and minute in its precautions to prevent abuse, and to insure the genuineness of the evidence. A rigorous compliance with its provisions was evidently intended, particularly in regard to the return of the commission. The affidavit, that it has not been opened or altered, is indispensable, unless expressly dispensed with by the written consent of the adverse party. It is no answer to say, that, in this case, after the order was so made at special term, allowing the commission, and directing the mode in which it should be returned, both parties signed a similar direction in the body of the commission. At the most, the adverse party, in doing this, consented to the appointment of the agent designated by the party suing it out;

—it was no waiver of the provisions of the law requiring full proof of the authenticity of the evidence. Nor is it any answer to say, that according to the practice of the express companies this provision could not be complied with, inasmuch as no one person employed in any of those companies accompanied the express the whole route. If the party suing out the commission knew this, he ought to have communicated it to the other party, if he thought this mode of transmission was preferable to the mail; if the other party refused to dispense with the affidavit verifying the return, the only course left was, to have the return made by mail.

III. It does not appear that anything was suggested to the court, or to any of the parties, that a compliance with the statute was not practicable. At all events, the court cannot dispense with this requirement, without consent. The depositions cannot be read.

---

## IN THE APPLICATION OF CLARK.

*Supreme Court Circuit, Duchess County, December,* 1854.

### NATURALIZATION—DUTIES OF THE COURT.

The powers conferred by the General Government upon the State Courts to admit aliens to citizenship, cannot be delegated to the clerks of those courts. They must be exercised by the courts themselves, upon a judicial examination of each case.

Application for admission to citizenship.

The facts sufficiently appear in the opinion of the court.

DEAN, J.—The petitioner, a native of Scotland, applied to the clerk of this court for admission as a citizen. A number of other aliens made a like application. The clerk was proceeding to administer the formal oath to the witnesses of the respective applicants when the subject was brought to my notice, and on inquiry I learned that the practice had, for many years, been for the clerk to receive and pass upon all applications for naturalization, and grant certificates without